IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EARL RICE | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | NO. 3-08-CV-0264-B |
| | § | |
| NATHANIEL QUARTERMAN, Director | § | (<u>Consolidated With</u>: |
| Texas Department of Criminal Justice, | § | No. 3-08-CV-0265-B) |
| Correctional Institutions Division | § | |
| | § | |
| Respondent. | § | |

## FINDINGS AND RECOMMENDATION OF THE
## UNITED STATES MAGISTRATE JUDGE

Petitioner Earl Rice, a Texas prisoner, has filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the application should be denied.

I.

A jury convicted petitioner of possession of 400 grams or more of cocaine and impersonating a public servant. Punishment, enhanced by two prior felony convictions, was assessed at 90 years confinement and 27 years confinement, respectively. Both convictions were affirmed on direct appeal. *Rice v. State*, 195 S.W.3d 876 (Tex. App.--Dallas, Jul. 7, 2006, pet. ref'd). Petitioner also challenged his convictions on state collateral review. The Texas Court of Criminal Appeals denied relief without written order. *Ex parte Rice*, Nos. WR-69,015-01 & WR-69,015-02 (Tex. Crim. App. Jan. 23, 2008). Petitioner then filed this action in federal district court.[1]

---

[1] Petitioner filed separate federal writs with respect to each conviction. The two cases were subsequently consolidated and referred to the magistrate judge for report and recommendation. *See* Order, 2/20/08.

II.

In two broad grounds for relief, petitioner contends that he received ineffective assistance of counsel because his attorney: (1) failed to subpoena two key witnesses; (2) told the jury that one of the missing witnesses would testify at trial; (3) failed to impeach the arresting officer with prior inconsistent statements; (4) advised petitioner not to testify in his own defense; and (5) questioned a Louisiana parole officer about irrelevant matters during the punishment hearing.

A.

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). To prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *Id.*, 104 S.Ct. at 2064. Second, the petitioner must prove that he was prejudiced by his attorney's substandard performance. *Id.* at 2067. Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068; *see also Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993) (habeas petitioner must show that trial result was unreliable or proceeding fundamentally unfair due to deficient performance of counsel).

Where, as here, a state court has already rejected an ineffective assistance of counsel claim, a federal court may grant habeas relief only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 411-13, 120 S.Ct. 1495, 1522-24, 146 L.Ed.2d 389 (2000). A state court decision is contrary to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir.), *cert. denied*, 124 S.Ct. 2812 (2004), *citing Williams*, 120 S.Ct. at 1519-20. A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 120 S.Ct. at 1523; *see also Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). Factual determinations made by state courts are presumed to be correct and are unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

B.

Petitioner was charged in separate indictments with possession of 400 grams or more of cocaine and impersonating a public servant. *Ex parte Rice*, WR-69,015-01, Tr. at 6, *Ex parte Rice*, WR-69,015-02, Tr. at 6. Both cases were tried together before the same jury. At trial, Devin Gonzales, a Texas state trooper, testified that he was patrolling IH-20 in Kaufman County on the morning of September 26, 2003, when he observed a white Crown Victoria sedan that looked like an unmarked police car traveling east on the highway towards Louisiana. (*See* SF-IX at 11-13, 57-58). The car had Louisiana license plates, which read, "Sgt. 6." (*Id.* at 12). Gonzales followed the car and ran a check on the license plates. (*Id.*). Unable to find any record of the plates, Gonzales initiated a traffic stop. (*Id.* at 12-13). Petitioner, who was the sole occupant of the vehicle, exited

the car and approached Gonzales. (*Id.* at 14-15). He was wearing what appeared to be a department of corrections uniform with no badge or name plate, a Chicago White Sox baseball cap, and tennis shoes. (*Id.* at 15-16). Petitioner identified himself as a Louisiana Department of Corrections officer and told Gonzales that he came to Texas to pick up a prisoner, but that the prisoner had been transferred to another unit or department before he arrived. (*Id.* at 17-18, 37). When Gonzales threatened to call the Louisiana authorities to verify petitioner's status, petitioner changed his story and said that he had come to Texas two days earlier to visit his sister. (*Id.* at 19). At that point, Gonzales called for back-up and asked petitioner for consent to search his car. (*Id.* at 20, 41). After petitioner consented to the search, Gonzales found two valid Louisiana license plates in the back seat of the vehicle. (*Id.* at 21). The license plates were registered to Sterling Rice, petitioner's deceased brother. (*Id.* at 34). Gonzales also discovered a duffle bag in the car trunk. (*Id.* at 21). Inside the duffle bag was a black velvet bag containing approximately 500 grams of powdered cocaine. (*Id.* at 21-28).

The sole defense witness was John Lee, a Louisiana parole officer, who testified that Sterling Rice had worked for the East Carroll Parish Prison Farm at one time. (*Id.* at 101). Although defense counsel anticipated that another witness, Earnest Rice, would also testify at the guilt-innocence phase of the trial, Earnest failed to appear and could not be reached by phone. (*See id.* at 104). The defense then rested its case without calling any other witnesses. (*Id.*). After hearing closing arguments, the jury found petitioner guilty of both offenses as alleged in the indictments. (*Id.* at 124).

C.

Petitioner first contends that defense counsel was ineffective for failing to subpoena two key witnesses--Patrick Rice and Earnest Rice. If called to testify, Patrick would have said that he planted

the cocaine in petitioner's car because he thought petitioner murdered their brother, Sterling. *See Ex parte Rice*, WR-69,015-01, Tr. 213-14; *Ex parte Rice*, WR-69,015-02, Tr. at 212-13. Earnest would have testified that Patrick admitted to putting the drugs in the car. *See Ex parte Rice*, WR-69,015-01, Tr. at 201, ¶¶ 8-9; *Ex parte Rice*, WR-69,015-02, Tr. at 200, ¶¶ 8-9.

In a sworn affidavit filed with the state habeas court, petitioner's attorney, Jonathan Amdur, explained why he did not subpoena Patrick Rice:

> I decided to not subpoena Patrick Rice because, as a practical matter, I knew it was highly unlikely that Patrick Rice would agree to testify even if subpoenaed: he was a fugitive and had thus far refused to cooperate even to help his brother. I was concerned that, aside from the logistical improbabilities of having him physically served, any successful efforts at having him served risked angering Patrick Rice to the point of him refusing to cooperate to the extent that he had agreed to. In addition, I had no idea what Patrick Rice's intentions were, or what he intended his testimony to be. If Patrick Rice had, in fact, planted drugs on his brother, who he thought had murdered another brother, then I had serious reservations about putting Patrick Rice on the stand without first having a chance to interview him.

*Ex parte Rice*, WR-69,015-01, Tr. at 262; *Ex parte Rice*, WR-69,015-02, Tr. at 255. The state court accepted this explanation and found that Patrick was an "not an available witness." *Ex parte Rice*, WR-69,015-01, Tr. at 279, ¶ 11; *Ex parte Rice*, WR-69,015-02, Tr. at 272, ¶ 11. Petitioner has failed to adduce any evidence, much less clear and convincing evidence, to rebut that finding. In fact, petitioner concedes that "[e]xecuting the subpoena for Patrick Rice would have been difficult due to his fugitive status[.]" (Pet. Mem. Br. at 19). Even if Patrick could have been located and served, there is no reason to believe that he would have honored the subpoena. In his affidavit, Earnest Rice stated that he told Amdur before trial that Patrick had admitted to planting the cocaine. When Amdur asked if Patrick would testify, Earnest said he "did not know because Patrick was a fugitive who was on the run. I never got a clear answer from Patrick regarding whether he would actually

testify on Earl's behalf." *Ex parte Rice*, WR-69,015-01, Tr. at 202, ¶ 12; *Ex parte Rice*, WR-69,015-02, Tr. at 201, ¶ 12. Although Patrick eventually gave Earnest a signed affidavit admitting that he put the drugs in petitioner's car, Earnest did not deliver the affidavit to Amdur until the guilt-innocence portion of the trial was over. *Ex parte Rice*, WR-69,015-01, Tr. at 202-03, ¶ 15; *Ex parte Rice*, WR-69,015-02, Tr. at 201-02, ¶ 15. On these facts, there is no basis for concluding that Amdur was ineffective for failing to subpoena Patrick Rice.

Nor was Amdur ineffective for failing to subpoena Earnest Rice. According to Amdur, he did not subpoena Earnest because "I had his assurance that he would be present and available to testify." *Ex parte Rice*, WR-69,015-01, Tr. at 262; *Ex parte Rice*, WR-69,015-02, Tr. at 255. Despite knowing that the trial started on Monday, June 6, 2005, Earnest did not leave his home in Louisiana until sometime on Tuesday, June 7, 2005. By the time he arrived in court, the guilt-innocence portion of the trial had already concluded. *See Ex parte Rice*, WR-69,015-01, Tr. at 202-03, ¶¶ 13 & 15; *Ex parte Rice*, WR-69,015-02, Tr. at 201-02, ¶¶ 13 & 15. Earnest, who testified at the punishment hearing, explained that he was late in getting to court because he waited until Patrick gave him an affidavit accepting full responsibility for the drugs found in petitioner's car. (*See* SF-X at 15, 28-29). The judge then inquired:

> THE COURT: So it was not a matter of leaving Louisiana at the time you told Mr. Amdur that you were going to be leaving. You were meeting with your brother to receive this statement, is that correct?
>
> THE WITNESS: He had--he brought the paper to me. I supposed to have been came Wednesday for court. I thought Earl was gonna have his trial. I know it was Tuesday, but I thought it was gonna be two days. So I wasn't planning coming Tuesday. I was planning on coming Wednesday for his trial 'cause I wanted to make my opening statement, but I had to run my girlfriend to the doctor Tuesday. So I wasn't gonna be able to make it Tuesday like I wanted to come to court to see him.

(*Id.* at 29). Based on this testimony, the state habeas court found that Earnest was not "available" to testify at the guilt-innocence phase of the trial and that counsel was not ineffective for failing to subpoena him. *See Ex parte Rice*, WR-69,015-01, Tr. at 280, ¶ 16 & 284, ¶ 7; *Ex parte Rice*, WR-69,015-02, Tr. at 273, ¶ 16 & 277, ¶ 7.

Even if Earnest had been subpoenaed and had testified at the guilt-innocence phase of the trial, his testimony likely would have been ruled inadmissible. It is clear from his affidavit and his testimony at the punishment hearing that Earnest had no personal knowledge that Patrick planted drugs in petitioner's car. (*See* SF-X at 21-32). Rather, Earnest had intended to testify that:

> Patrick told me that he planted cocaine in the Crown Victoria because he was angry at Earl. When I asked Patrick why he was so angry with his own brother such that he would do something so terrible to Earl, Patrick told me that he thought that Earl was involved in Sterling's death.
>
> * * * *
>
> Patrick told me that he bought cocaine from a guy in Dallas and hid it in Earl's car. Patrick told me that he wanted Earl to be busted so that Earl would go to prison. Patrick also told me that he wanted to punish Earl for causing Sterling's death.

*Ex parte Rice*, WR-69,015-01, Tr. at 201, ¶¶ 8-9; *Ex parte Rice*, WR-69,015-02, Tr. at 200, ¶¶ 8-9. The state habeas court determined that petitioner was not prejudiced by counsel's failure to subpoena Earnest because his testimony "would have concerned inadmissible hearsay[.]" *Ex parte Rice*, WR-69,015-01, Tr. at 280, ¶ 17; *Ex parte Rice*, WR-69,015-02, Tr. at 273, ¶ 17. In light of that determination, which was based on a correct interpretation of the Texas hearsay rule,[2] petitioner cannot satisfy the prejudice prong of the *Strickland* analysis.

---

[2] Under Texas law, "hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d) (Vernon 2003). Although defense counsel argued that Patrick's hearsay statement should be admitted into evidence as an admission against interest, (*see* SF-X at 21), the trial court determined that the statement was not trustworthy and, therefore, inadmissible. (*See id.* at 31).

To the extent petitioner argues that his attorney was ineffective for failing to ask for a continuance to secure the appearance of his brothers, that claim also fails. No continuance would have allowed Earnest Rice to offer admissible testimony. Regardless of when the case was tried, Earnest would not have been permitted to testify regarding hearsay statements made by Patrick. Nor could defense counsel, in good faith, represent that Patrick Rice would be available to testify if the trial was continued to some future date. As far as anyone knew, Patrick was a fugitive who may or may not have appeared in court even if he could be located and served with a subpoena. This ground for relief should be overruled.

D.

In a related claim, petitioner argues that counsel was ineffective for telling the jury that Earnest Rice would testify at trial. (*See* Pet. Mem. Br. at 26). In his opening statement, Amdur represented:

> I anticipate putting on two witnesses. You're going to hear from Earnest Rice, who would be Earl's brother, and then you are going to hear from [John Lee] a witness actually you have already heard from at some point. When Earnest takes the stand, I anticipate the evidence is going to show that he recognizes Earl as his own brother. Earnest is employed by the Louisiana Department of Corrections as a guard. John Lee is going to testify that not only is [Earnest] an employee of the Louisiana Department of Corrections, he had a brother who died about a month or so before Earl was arrested by the name of Sterling Rice. Now the exact cause of death, the facts we're a little bit hazy on. What we know is he was found dead in Louisiana.
>
> Earl had possession of Sterling's car at the time he was pulled over, we anticipate the evidence is going to show. We also anticipate that you will have good reason to believe at the close of testimony that Earl was driving around, and he knew that he had his deceased brother's car, I think that was obvious. He knew the license plate was not real in the back, it was SGT. 6, an abbreviation for Sergeant 6, which Sterling had been with the department of corrections. We also anticipate you're going to hear evidence that Earl did not know that

> he was carrying cocaine on him, the facts behind which you will hear through the testimony of Earnest Rice. I'd rather you hear it from him than from me.

(*See* SF-IX at 98-99). Because Earnest did not testify at the guilt-innocence phase of the trial, the jury never heard any evidence that petitioner was unaware of the drugs found in his car.

As previously discussed, Amdur reasonably expected that Earnest Rice would appear at trial without the necessity of a subpoena. That Earnest was late in getting to court does not mean that Amdur was ineffective in telling the jury he would testify, particularly where counsel was not responsible for Earnest's tardiness, made no specific promises in his opening statement, and merely summarized the substance of anticipated testimony. *See, e.g. Wishnefsky v. Meyers*, No. 4CV030417, 2005 WL 1498502 at *17 (M.D. Pa. Jun. 22, 2005), *citing Williams v. Bowersox*, 340 F.3d 667, 671-72 (8th Cir. 2003) (counsel was not ineffective for failing to produce witness referenced in opening statement where "subsequent complications," including unavailability of the witness, prevented the witness from testifying); *United States v. Mittal*, No. 98 CR. 1302 (JGK), 2000 WL 1610799 at *4 (S.D.N.Y. Oct. 27, 2000) ("Changing course from the roadmap outlined in opening statement as the trial progresses is not necessarily ineffective assistance.").

E.

Next, petitioner accuses defense counsel of failing to impeach Gonzales with prior inconsistent statements about the initial traffic stop and for bolstering the state's case during his closing argument. Amdur responded to both charges in an affidavit filed with the state habeas court:

> Based on how I perceived the jury to respond to Trooper Gonzales' testimony, I made the tactical decision to not challenge him on several points, but rather to only challenge him on a few key points. Trooper Gonzales was articulate, established good rapport with the jury, and testified well. I felt that employing a slash-and-burn approach in my cross examination of him would further alienate Mr. Rice form [sic] the jury. To maintain my credibility, I chose to not

> acrimoniously confront him, and I did not question the legality of his stop or the search, both of which I believed had been legally made. I did, however, feel that he could not justify the absence of crucial evidence (i.e., the videotape) or his attitude about the missing evidence, as I also knew that not all of the officers on the scene would be called to testify and that, if I retained enough credibility with the jury and made it an issue for them, then the jury might not understand why not all officers were called to testify. I do not believe that conceding certain points for the sake of credibility amounts to bolstering the State's case. My client was Mr. Rice, and not the State; I simply tried to make Mr. Rice's position as credible and tenable as I knew how.

See Ex parte Rice, WR-69,015-01, Tr. at 263-64; Ex parte Rice, WR-69,015-02, Tr. at 256-57. The state habeas court accepted this explanation, concluding that "[c]ounsel's decision to question the officer in the manner he did was sound trial strategy." See Ex parte Rice, WR-69,015-01, Tr. at 285, ¶ 10; Ex parte Rice, WR-69,015-02, Tr. at 278, ¶ 10. That conclusion is supported by the record, which shows that Amdur questioned Gonzales at length about the absence of video evidence, photographic evidence, fingerprints, or hand wipes. (See SF-IX at 37-39, 42-44, 47). As a result of his effective cross-examination, Amdur was able to challenge to the sufficiency of the evidence during his closing argument:

> Officer Gonzales admitted, he said DWI cases oh, my God, whenever possible we try to preserve those tapes. Remember Officer Gonzales said it, DWI. Now it is a serious offense, don't get me wrong, but it's a Class B misdemeanor. Worse case scenario you're looking at being put into county jail for six months, which is a long time but nothing compared to being put in prison for up to life, 60 years or 99 years. So for DWIs he's going to bend over backwards to preserve the videos; but for something more important when you're looking at a felony, what were his exact words, he said I believe if it happens, it happens. Meaning if we forget to put in the video, we forget to check the video, if it happens, it happens.
>
> \* \* \* \* \*
>
> The reason I'm hitting this point, this point that nobody overlooks for DWIs but apparently you can overlook them when somebody is

>looking at life in prison, the reason I'm hitting this point is because this is a piece of evidence that would either convict Mr. Rice or acquit him, hands down.
>
>I will tell you one time when I was a prosecutor, I had a murder trial took place out in a gas station where there was a video. The video never made it to my office. I dismissed the case. It was that important. You can not go in front of a jury and say ignore the evidence that you should have been privy to, ignore it. Let's just not present that there's a reasonable doubt there. Listen to everything else. Because it was vital. It would have told you much more credibility, much more than any other witness or every other witness would have said . . . If somebody says that evidence is not there, it's not available, it's much better to let, as they say ten guilty men walk than one innocent person be convicted.

(SF-IX at 111-13).

Moreover, petitioner has pointed to only one minor inconsistency between the testimony given by Gonzales at the suppression hearing and his testimony at trial.[3] At the suppression hearing, Gonzales said that petitioner did not provide any identification after the initial traffic stop. (*See* SF-III at 10). However, at trial, Gonzales testified that petitioner produced a driver's license. (*See* SF-IX at 18). Even had counsel used this prior inconsistent statement to impeach Gonzales on cross-examination, it is doubtful that the outcome of the trial would have been different. Whether petitioner had a driver's license when he was stopped by Gonzales is inconsequential given that he falsely identified himself as a Louisiana corrections officer and had more than 500 grams of cocaine in the trunk of his car. Petitioner does not allege, much less prove, that this issue had any bearing

---

[3] In his brief, petitioner identifies two other statements made by Gonzales at the suppression hearing which he contends should have been used for impeachment purposes. (*See* Pet. Mem. Br. at 23-24). The first statement--that Gonzales stopped petitioner for driving a car with tinted windows--misstates the record. In fact, Gonzales testified at the suppression hearing that he began to follow the vehicle driven by petitioner because it had tinted windows. (*See* SF-III at 19). Only after Gonzales was unable to confirm a valid registration after running a licence plate check did he become suspicious and initiate a traffic stop. (*Id.* at 7). That explanation is entirely consistent with Gonzales' trial testimony. (*Compare id. with* SF-IX at 13). Nor is there any inconsistency between Gonzales' testimony at the suppression hearing that petitioner was detained prior to the search of his vehicle and arrested only after drugs were found, (*see* SF-III at 20), and his trial testimony on the same subject. (*See* SF-IX at 41).

on the validity of the search of his vehicle, which was done by consent. Under these circumstances, counsel's failure to impeach Gonzales with this prior inconsistent statement does not provide a basis for federal habeas relief. *See Burkett v. Quarterman*, No. H-07-1782, 2008 WL 219511 at *10 & n.52 (S.D. Tex. Jan. 24, 2008) (failure to investigate and discover "inconsequential" impeachment evidence does not amount to ineffective assistance of counsel).

Nor was counsel ineffective for conceding during his closing argument that Gonzales was "completely justified" in initiating a traffic stop. (*See* SF-IX at 108). By the time the case was submitted to the jury, the validity of the traffic stop was no longer in doubt. The state habeas court found that Amdur's decision not to attack the basis for the stop, but rather to focus on whether petitioner knew drugs were in the car, was a reasonable trial strategy. *See Ex parte Rice*, WR-69,015-01, Tr. at 282, ¶ 34; *Ex parte Rice*, WR-69,015-02, Tr. at 275, ¶ 34. Petitioner offers nothing to rebut that finding. *See, e.g. United States v. Short*, 181 F.3d 620, 624-25 (5th Cir. 1999), *cert. denied*, 120 S.Ct. 825 (2000) (decision by counsel to concede defendant's involvement in drug activity during closing argument "fell within the ambit of trial strategy and tactics" in light of overwhelming evidence presented at trial).

F.

Petitioner further contends that his attorney was ineffective for advising him not to testify at the guilt-innocence phase of the trial. In an affidavit filed with the state habeas court, Amdur explained why he advised petitioner against testifying:

> Before we closed our case, Earl indicated that he wished to testify. I reminded him that if he did testify, then the State could and almost certainly would impeach him with his criminal record. I had explained this to him in the past and told him that, naturally, the final decision of whether to testify was his to make. While in trial, I reminded Mr. Rice that impeaching him with his criminal history would effectively enable the State to warn the jury to consider Mr.

> Rice's criminal history in its deliberation, without the State actually having to say it in those words. I reminded Mr. Rice that, if he were convicted, he could always testify in punishment, regardless of whether he testified in guilt-innocence. Mr. Rice did not argue with me, but seemed to accept my counsel and he articulated to me that he would not testify at that time.

*See Ex parte Rice*, WR-69,015-01, Tr. at 264; *Ex parte Rice*, WR-69,015-02, Tr. at 257. In light of petitioner's extensive criminal record, which included prior convictions for possession of cocaine, battery, and theft, Amdur properly advised petitioner not to testify. *See Ibarra v. Dretke*, No. 3-03-CV-2667-K, 2004 WL 1593633 at *3 (N.D. Tex. Jul. 15, 2004), *rec. adopted*, 2004 WL 1809814 (N.D. Tex. Aug. 12, 2004) (counsel was not ineffective for advising petitioner, who had a prior federal drug conviction that could have been used for impeachment purposes, not to testify at trial).

G.

Finally, petitioner criticizes his attorney for questioning John Lee, who proved-up petitioner's prior convictions at the punishment hearing, about "the minimum amount of money" a person would have to steal in order for theft to be a felony under Louisiana law. According to Amdur:

> I tried to argue that, just as the State argued that the jury could consider the severity of those offenses for purposes of punishment, they should also consider that, under Texas law, an identical offense committed in Texas would have been a misdemeanor. My point was not to argue for jury nullification, but for an element of leniency in the punishment deliberation; that is, I was not attempting to argue that the paragraph should not be found true, but that the jury should consider that a life sentence might not be appropriate based on an enhancement paragraph that is the equivalent of a Theft $500-$1500 conviction.

*See Ex parte Rice*, WR-69,015-01, Tr. at 264-65; *Ex parte Rice*, WR-69,015-02, Tr. at 257-58. The state habeas court determined that "[c]ounsel's strategy in establishing that the applicant already served a harsh sentence for a crime that was considered a misdemeanor in Texas . . . was sound trial strategy such that it allowed a plea of leniency to the jury[.]" *See Ex parte Rice*, WR-69,015-01, Tr.

at 286, ¶ 14; *Ex parte Rice*, WR-69,015-02, Tr. at 279, ¶ 14. Petitioner fails to explain how this strategic decision was deficient, much less how he was prejudiced by Lee's testimony. This ground for relief should be overruled.

## RECOMMENDATION

Petitioner's application for writ of habeas corpus should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party may file written objections to the recommendation within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: February 27, 2009.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE